SHIGEKO RAKOSI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rakosi v. Commissioner
Docket No. 21459-85.
United States Tax Court
T.C. Memo 1988-149; 1988 Tax Ct. Memo LEXIS 177; 55 T.C.M. (CCH) 578; T.C.M. (RIA) 88149; April 12, 1988. Shigeko Rakosi, pro se. David W. *178 Otto, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to Special Trial Judge Marvin F. Peterson pursuant to section 7456(d) (redesignated as section 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755), and Rules 180, 181 and 183. [1] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax
I.R.C. 1954
Year
Deficiency
Sec. 6651(a)
6653(a)(1)
6653(a)(2)
1981
$ 8,397
$ 1,236.75
$ 419.85
*
1982
9,673
1,368.00
483.65 **
The issues for determination are: (1) whether petitioner is taxable on wages assigned to *179 Church of the Saved; or in the alternative, whether petitioner is entitled to a charitable contribution deduction for such amounts; (2) whether petitioner is entitled to certain itemized deductions in excess of those conceded by respondent; (3) whether petitioner is entitled to a deduction for additional personal exemptions; (4) whether petitioner may calculate her income tax liability under the joint income tax rates; (5) whether petitioner is liable for the additions to tax for delinquency; and (6) whether petitioner is liable for the additions to tax for negligence. FINDINGS OF FACT Some of the facts have been stipulated and are so found. When petitioner filed her petition in this case she resided in Phoenix, Arizona. During the years 1981 and 1982 petitioner was married to Attila Rakosi. Petitioner lived with her husband, their two children and her mother in Phoenix during the years at issue. Petitioner was employed as a computer programmer by the Maricopa County Board of Supervisors in Phoenix, Arizona. During 1981 and 1982 she received wages in the amounts of $ 28,259 and $ 32,696, respectively. Petitioner's employer issued Forms W-2 for the years involved *180 which reflected her income from wages. Petitioner did not file an income tax return for either 1981 or 1982. Petitioner filed a Form 843 for the years 1981 and 1982 seeking a refund of withheld taxes in the amounts of $ 3,450.27 and $ 4,201.14, respectively. Petitioner also sought a refund of Federal Insurance Contribution Act taxes which were withheld from petitioner's wages for 1981 and 1982 in the amounts of $ 1,879.29 and $ 2,170.80, respectively. Petitioner filed the claims for refund on the ground that her wages were not taxable under the Internal Revenue Code. On October 5, 1978, petitioner and her husband executed a document entitled "Constitution of Church of the Saved." Under the constitution, Church of the Saved was organized for religious purposes. Petitioner and her husband were co-pastors of Church of the Saved. Petitioner and her husband were the only ministers of Church of the Saved and had full control of all of its activities. Church of the Saved had no formal membership, no scheduled services, and no formal place for holding religious services. Church of the Saved did not maintain any formal financial records or maintain a separate bank account. Its *181 only source of funds came from petitioner, who cashed her salary check and turned the cash over to her husband. Petitioner's husband was primarily responsible for disbursing the funds petitioner received from her employer. The funds were used to pay all of petitioner's personal expenses and those of her family. As a pastor of Church of the Saved petitioner was required to take a vow of poverty. On October 5, 1978, petitioner executed a vow of poverty. The vow of poverty provided as follows: [petitioner] being a duly ordained minister and official of the Church of the Saved and a Member of said Church's Sacerdotal Order, do hereby divest myself as a person of all my worldly possessions and income whatsoever -- and all income from whatever source derived, including income from employment outside the confines of the monastery when directed by my Order to perform such labors as its agent for the benefit of religion and support of the Church * * *.
Petitioner endorsed her salary checks by signing her name followed by the words, "agent of Church of the Saved." During the years involved herein, the community property laws of the State of Arizona applied to petitioner's earned *182 income and to the expenditures made. Petitioner's husband did not earn any income during 1981 and 1982. Petitioner's income from wages was the sole source of support for her and her family. At the trial of this case, and in respondent's opening brief, respondent conceded that for the years 1981 and 1982 petitioner was entitled to certain itemized deductions in the amounts of $ 5,781.96 and $ 4,692.08, respectively, and two additional personal exemptions, one each for one of her sons and for her mother. Based on this record, petitioner has failed to show that she is entitled to any deductions or personal exemptions in addition to those allowed by respondent. Petitioner relied on her husband to handle most of the financial matters concerning family finances and other expenditures. She also allowed her husband to determine whether or not she was liable for filing income tax returns. For the years at issue petitioner did not file income tax returns since her husband decided that her wage income was received as an agent of Church of Saved based on the vow of poverty she had executed, and, accordingly, was not taxable to petitioner. OPINION Petitioner's primary argument is *183 that she is not taxable on her wage income since she executed a vow of poverty in favor of Church of the Saved. Petitioner's wages were received by her for services performed as a computer programmer for Maricopa County, Arizona. Petitioner received her wages in the form of a check made payable to her. Petitioner cashed the checks by endorsing her name. She also added the words "as agent for the Church of the Saved," presumably to recognize the vow of poverty she executed on behalf of Church of the Saved. Maricopa County had no contract or other agreement with Church of the Saved regarding petitioner's employment. Petitioner performed all of the duties required by her employer and she received all of the benefits of such employment, including medical and life insurance and participation in the retirement plan of Maricopa County. There is no dispute that there was no employment contract or any other contract between Maricopa County and Church of the Saved. Petitioner's only argument to support her contention that her wage income is not taxable to her is the fact that she executed the vow of poverty in favor of Church of the Saved. Respondent contends that petitioner earned *184 the income and that the vow of poverty was ineffective to shift the income to Church of the Saved. We agree with respondent. It has long been established that when an agent receives income for the principal, it is the income of the principal, not the agent. However, where the income is not received on behalf of a separate and distinct principal, but is received by a person in his individual capacity, the income is taxed to such individual. , affd. without published opinion . Also see , affd. . Further, it is well established that income must be taxed to the one who earns it. . Here is is clear that petitioner's wages were paid to her in her individual capacity and not as an agent for Church of the Saved. Accordingly, the vow of poverty was not effective to relieve petitioner of her duty to report her income from wages. See . Petitioner argues, in the alternative, *185 that if she is taxable on her wages, then she is entitled to a charitable contribution deduction in the amount of her wage income that was given to Church of the Saved. Petitioner has the burden of proof to show that Church of the Saved qualifies as an organization for which contributions are deductible under section 170(c)(2). . Based on the constitution of Church of the Saved, it is clear that it was formed to perform religious functions. However, the fact that the stated purposes and activities of an organization are religious in nature does not, by itself, establish the organization is a church. We stated in , as follows: A church is a coherent group of individuals and families that join together to accomplish the religious purposes of mutually held beliefs. In other words, a church's principal means of accomplishing its religious purposes must be to assemble regularly a group of individuals related by common worship and faith. * * * Church of the Saved fails to meet the above test. Church of the Saved had no members, other than petitioner *186 and her husband, did not hold regularly scheduled religious services, and had no regular place of service. Based on these facts it can only be concluded that Church of the Saved was not established to serve any associational role for purposes of worship. Accordingly, we hold that Church of the Saved was not a church during the years at issue. . Respondent also argues that the income given or assigned to Church of the Saved are not charitable contributions deductible under section 170(a). Respondent contends that Church of the Saved was not operated exclusively for religious purposes in that undetermined amounts of monies given to Church of the Saved were used for the personal benefit of petitioner and her family. Section 170(c)(2) defines a charitable contribution as a contribution or gift to or for the use of a corporation, trust, or community chest, fund or foundation which is organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, provided that none of the net earnings inure to the benefit of any private shareholder or individual. Petitioner bears *187 the burden of proving that she is entitled to the deduction she claims. . Here, the record shows that the alleged charitable contribution to Church of the Saved was used for personal living expenses of petitioner and her family. In addition, petitioner was unable to account for other amounts of the contribution since Church of the Saved failed to keep financial records which would account for its expenditures. Accordingly, petitioner is not entitled to a charitable contribution deduction for any amounts purportedly given to Church of the Saved. , affd. without published opinion ; , affd. ; Respondent allowed one dependency exemption for petitioner in the statutory notice of deficiency. The record shows that petitioner was the sole source of support for her family. At the trial of this case the parties agreed that petitioner's husband was entitled to one-half of her income *188 under the community property laws of Arizona and that petitioner and her husband would each be entitled to divide the dependency exemptions. The parties agreed that petitioner is entitled to a dependency exemption for herself, one of her sons and for her mother. Accordingly, petitioner is entitled to three dependency exemptions for each of the years at issue. At the trial petitioner claimed her income tax liability should be calculated by use of the joint income tax rates. Respondent contends that the joint rates are not available to petitioner since no joint income tax return or joint return election was ever filed. We agree. In the instant case petitioner failed to file a return for either 1981 or 1982. A joint return must be filed in order to elect joint return treatment. . Cf. . Since petitioner did not file an income tax return, it follows that petitioner's tax liability may not be calculated by using the joint income tax rates. Respondent has also determined that petitioner is liable for the additions to tax for delinquency and *189 negligence under sections 6651 and 6653(a) for each of the years 1981 and 1982. Petitioner bears the burden of proof to show that her failure to file returns was due to reasonable cause. ; . Petitioner failed to file returns for each of the years involved solely on the advice of her husband. However, petitioner cannot avoid the addition to tax for delinquency on this ground unless she can show that her reliance was reasonable. Petitioner failed to seek the advice of a competent tax advisor who was fully informed of all relevant facts to determine whether her husband's advice was correct. Under these circumstances petitioner did not exercise ordinary business care and prudence and we can only conclude that her failure to file returns was not due to reasonable cause. Petitioner also has the burden of proof to show that she is not liable for the additions to tax under section 6653(a) due to negligence or intentional disregard of rules and regulations. . *190 Petitioner's failure to specifically address the issue of negligence justifies the addition for negligence as determined by respondent. More importantly, however, petitioner has failed to explain her inconsistent action of treating her wage income as belonging to Church of the Saved under her vow of poverty, while at the same time, she continued to use these funds for personal and family expenses. See . Accordingly, we sustain respondent's determination on this issue. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. All Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise noted. ↩
*. 50 percent of the interest due on $ 8,397. ** 50 percent of the interest due on $ 9,673. ↩